The cause was fully argued, and Chancellor Rutledge afterwards delivered the decree of the court:
This suit is brought for the purpose of obtaining a discovery from the defendant Dawson, of the following , J ,T_ . charges : Whether he did not know or was not privy to Pourie’s giving the two first notes in the bilb mentioned, <during the partnership ? Whether the two notes .last mentioned, with the partnership signature, were not drawn by Pourie, after its dissolution with Dawson’s privity; and whether they were not rene^jtof the first notes, and antedated ? And whether there not a mistake in the dates ? The bill states that these facts were only in the knowledge of the parties interested in the transaction, and particularly of the defendant Dawson ; bujlould not be made to appear on the trial at law; otherwise the jury would have found a verdict for the plaintiff instead of defendant. (The bill prayed a discovery and relief.) The defendant in his answer positively denies* being in any manner privy to, or having any knowledge of the first note having been given by Pourie, till after the dissolution of the partnership: and with respect to the two last mentioned renewals, he is equally ignorant of the transaction, as they were given after the dissolution of the partnership, without his knowledge or consent, and without his being consulted. Cantor acknowledged to Huger, that the d.e- *42 fendant Dawson knew nothing of the renewal, and corroborates the answer.
This case has been very fully discussed, but it lies in a small compass : the single question is, whether any new , , ° . . . . , light has been thrown upon the subject by Dawson s answer, which should induce the court to order a new trial, under an idea that another jury would give a different verdict.
The defendant Dawson, has sworn so fully and pointedly, with respect to his want of knowledge, or being in any manner privy to this transaction, from first to last, as to leave no doubt on the mind about the business. He has placed the conduct of the parties in a stronger and more unfavorable point of view, than it could possibly have appeared in the trial at law.
The whole of this transaction is extremely mysterious, and attended with many suspicious, if not absolutely fraudulent circumstances. One very strong one that we shall notice is, the charge in bill, that complainant was possessed of the original notes, and in January, 1797, delivered, one to Cantor for collection; that'being unpaid on the 15th of February, they were protested. It must be remembered that at this tinM^he partnership was dissolved.— From defendant Daw^Brs answer, it appears that the complainant had then other notes in his possession of Pourie and Dawson’s; that he applied to the defendant Dawson for payment orilnewal of those, and never said any thing to him about the notes in question, although defendant Dawson had previously given public notice in the Gazette of the dissolution of the partnership, and that he alone was authorized to settle the debts of the, company. During this time, Cantor is the ostensible owner of the first notes, and has them protested. He afterwards colleagues with Pourie to renew them, (the partnership being dissolved) in their name, notwithstanding the notice in the Gazette, without applying to Dawson. When the two notes became due, they were protested. An action is then brought in his name, and on the trial, a verdict is given in favor of *43 the defendant. From the protests, it appears that the different applications, by the notary for payment, were all made to Pourie. After the verdict, notice is given of a motion intended to be made for a new trial, which, ho we- , % , ver, was never brought forward, although it is stated in the bill that the opinion oí the judge who tried the case, was in his favor. From February, 1797, when the first notes became due, till August, 1800, Cantor appears to be the owner of the notes, and complainant’s name is never mentioned. Eighteen months after the verdict, and several months after the death of Huger, who was a material witness for defendant, then for the first time, complainant comes forward, files this bill, and claims these notes as his property. If they really and bona fide belonged to complainant, and he had actually paid a good and valuable consideration for them previous to their being dishonored, why did he not then come forth and bring the action in his own name. Cantor, the broker, could have been a witness for him ; but that it seems was not convenient, for on his examination, his deceptive conduct with Pourie’, in receiving the notes after the dissolution of the partnership, antedating them, and extending the time of payment, without any consideration, would all have come out in evidence, if he had declared the whole truth^which it must be presumed he would have done,) and he would have been condemned from his own mouth. The truth was, however, partially disclosed from the testimony of Mr. H. so far as relates to the defendant Dawson’s ignorance of the renewal of the notes on which he was sued; and it is more than probable, that the clandestine surreptitious conduct of Pourie and Cantor, which was laid open by H’s evidence, was the cause of the jury finding the verdict they did.
The law is clear that every partner is bound by the acts' of the other, if it be in the course of trade, and during the existence of the partnership, but not after; and as a note drawn or endorsed by the defendant Dawson, in the name of the partnership after its dissolution, though for a partnership debt, and although he was authorized to settle all *44 the debts, would not have been binding on Pourie, to make him liable for payment, a fortiori, a note renewed by Pourie after dissolution of the partnership in their name, when he had nothing to do with the concerns of it, ought not to make defendant liable. Cantor’s conduct in this business, was extremely reprehensible; Pourie’s most unwarrantable from first to last : we lay his answer entirely aside ; for if noticed at all, we should be obliged to animadvert on it in the severest terms. By reason of the intimate connex? ion that subsists between partners, and for the sake of com* merce, the acts of one partner shall bind the rest; therefore the conduct of Pourie cannot, strictly speaking, be construed a fraud; yet, in a moral point of view, it savours very strongly of one, and Cantor’s conduct is materially implicated in it. In such cases, the court will be extreme* ly cautious of affording relief, when the party applying does not make out a very elearjcase. This case, as far as wc can discover, has been fairly and impartially tried at law, before a jury who were fully competent to decide upon and judge of all its circumstances : they have done so, and given a verdict in favor of the defendant. The complainant, or his agent, if he was so, (by whose acts he must be bound,) let slip his opportunity of applying for a new trial, notwithstanding he had (given notice of an intended motion for that purpose, and has assigned no reason for not making it. It is very seldom, and must be under very special circumstances, that this court will interpose, and order a new trial, when the party has neglected the opportunity of applying for it in the court below. Upon a full and attentive review of the case, and consideration of the answer of the defendant Dawson, we do not see sufficient grounds from the circumstances shewn on the part of the complainant to direct a new trial, or to entertain the suit, and therefore it is ordered and decreed that the bill be dismissed with costs..